UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 04-64-C**

**TIMOTHY MOMAH,** **PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**DENNY'S, INC., ET AL.,** **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of the defendant, Denny's, Inc. ("Denny's"), for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56. The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion.

**I.   FACTUAL BACKGROUND**

The following factual background is stated in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

On January 1, 2003, the plaintiff, Timothy Momah, and his friend, Moody Kane, both black males, went to Denny's Restaurant located at 434 Eastern Parkway in Louisville, Kentucky, around 4:00 a.m. Since the restaurant was "jam packed" and "every table was taken," they left to go to Waffle House without ordering food or being seated. They were the only black people in the waiting area of the restaurant.

Donald Miller and Ernest Fox, Sr., who were serving as security guards at the restaurant on January 1, 2003, motioned for the plaintiff and Kane to come to them.

Kane went over to them and was escorted into the restaurant. After waiting five or ten minutes, the plaintiff went back into the restaurant, where Kane was talking to Miller and Fox. Miller and Fox accused the plaintiff and Kane of eating and not paying for their food. The manager told Miller that the two men had not been served and the men were told that they could leave. Kane told Miller and Fox that he believed that they had been singled out due to their race. Miller did not respond to this accusation.

The plaintiff began walking toward his car and Miller and Fox motioned for him to come back to the restaurant. He said no. When he continued walking to his car instead of complying, Miller shoved him and arrested him. The plaintiff did not use force and did not resist arrest. He was taken to jail in a police van and charged with disorderly conduct. Miller accompanied him to the correctional facility. This charge was later dismissed with prejudice.

On the same evening Miller also stopped a white male and questioned him about whether he paid for his food. When Miller found that the white male had not paid for his food before attempting to leave, Miller arrested him and he was transported to the correctional facility at the same time as the plaintiff.

Denny's had security guards to provide parking lot security and to prevent people from leaving the restaurant without paying their bills. Denny's determined that it needed security services on Friday and Saturday nights from 12:00 a.m. until 6:00 a.m. Richard Estes, a Louisville Metro Corrections Officer, provided these services until he found other officers to do it. He used as guards only those officers that he

"knew of" or "knew their reputation." Initially, Estes received a flat fee of $30 for scheduling officers for the weekend and Denny's paid the guards in cash. Estes eventually incorporated his business under the name Law Enforcement Security Services, LLC ("Law Enforcement Security"). Law Enforcement Security provided the guards sign-in sheets, billed Denny's for the hours worked, and sent paychecks drawn on Law Enforcement Security's account to the security guards. Law Enforcement Security issued 1099s to the guards each year. Law Enforcement Security kept five dollars for every hour a guard worked.

On January 1, 2003, Miller and Fox, both Louisville Metro Corrections Officers, were providing security services at Denny's restaurant pursuant to the arrangement Denny's had with Law Enforcement Security. Although Miller wears "street clothes" when he is providing security at Denny's now, on January 1, 2003, Miller and Fox were wearing their Louisville Metro Corrections Department uniforms. Those uniforms include a badge and sidearm and look similar to the Louisville Metro Police uniforms. (Miller Depo., 19-20) Off-duty Corrections officers have the power to arrest individuals. When Miller arrested the plaintiff he was acting under his authority as a "sworn peace officer." (Miller Depo., 92)

The plaintiff brought this action against Miller, Fox, Denny's, and Law Enforcement Security, seeking relief under 42 U.S.C. § 1983 for violations of his right to be free from unreasonable searches and seizure under the Fourth Amendment and of his due process right under the Fifth Amendment. The plaintiff also states a claim

for violations of his rights under the Kentucky Constitution and 42 U.S.C. § 1981. Additionally, the plaintiff states claims for the common law torts of excessive force, battery, false imprisonment, malicious prosecution, and negligence. Fox was previously dismissed by agreed order.

## II.     LEGAL STANDARD

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed.R.Civ.P. 56(c)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp.*, 477 U.S. at 323. In deciding the motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Id.* A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252). The initial burden of showing the absence of a genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party does not have to support its motion with evidence disproving the non-moving party's claim. Instead, the moving party need only point out that there is an absence of evidence to support the non-moving party's case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp.*, 477 U.S. at 325). The ultimate question is whether the party bearing the burden of proof has presented a jury question as to each element of its case. *Id.*

## III. ANALYSIS

Denny's argues that it is entitled to summary judgment on all of the plaintiff's claims. Specifically, Denny's contends that: (1) the claims arising under § 1983 and the Kentucky Constitution fail because Denny's was not engaged in state action; (2) the claims under § 1981 fail because the plaintiff cannot establish that Denny's intentionally discriminated against him; (3) Denny's cannot be held vicariously liable for the common law tort claims because it was not Miller's employer or, alternatively, that the plaintiff has failed to establish facts sufficient to support his malicious prosecution claim. Each of the defendant's arguments will be discussed below.

### A. State Action

Denny's cannot be held liable under § 1983 and the Kentucky Constitution because it was not engaged in state action.[1]

Liability under § 1983 "attaches only to those wrongdoers who carry a badge

---

[1] As the standard for state action to support a claim under the Kentucky Constitution is the same as that for a claim under § 1983 it is unnecessary to discuss them separately. The court has not found sufficient state action to support the § 1983 claim or the claims under the Kentucky Constitution.

5

of authority of a State and represent it in some capacity . . . ." *NCAA v. Tarkanian*, 488 U.S. 177, 199 (1988). A private party's actions constitute state action under § 1983 where those actions may be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982). Three tests are used to determine whether conduct of a private entity qualifies as state action: the public function test, the state compulsion test, and the nexus or symbiotic relationship test. *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992).

**1.**     **Public Function Test**

For private action to qualify under the public function test, the court must find that the private party exercised powers that are traditionally reserved to the State. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974). The public function test is narrowly interpreted. *Chapman v. Higbee Company*, 319 F.3d 825 (6th Cir. 2003). Examples of functions that are typically reserved to the State include exercising eminent domain and holding public elections. *Id.* Circuits have consistently held that "the mere fact that the performance of private security functions may entail the investigation of a crime does not transform the actions of a private secuirty officer into state action." *Chapman*, 319 F.3d at 834 citing *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1457 (10th Cir. 1995); *White v. Scrivner Corp.*, 594 F.2d 140, 142-43 (5th Cir. 1979).

In this case, Denny's hired a security guard to protect against people not paying their bills and to provide security in the parking lot. "A merchant's detention of

persons suspected of stealing store property simply is not an action exclusively associated with the state. . . . A storekeeper's central motivation in detaining a person whom he believes to be in the act of stealing his property is self-protection, not altruism. Such action cannot logically be attributed to the state." *White*, 594 F.2d at 142. Denny's did not perform any function exclusively reserved to the state by hiring a security guard to stop people from stealing or to keep peace in the parking lot. Thus, under the public function test, Denny's was not a state actor.

**2.     State Compulsion Test**

The state compulsion test warrants little discussion. This test requires that "a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Nothing in this case establishes that the state exercised control over the Denny's security guards or Denny's arrangement to have security guards.

**3.     Symbiotic Relationship or Nexus Test**

Under the symbiotic relationship or nexus test, a § 1983 claimant "must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman v. Higbee Company*, 319 F.3d 825 (6th Cir. 2003). The plaintiff has failed to establish a sufficiently close nexus between any of Denny's conduct and state

conduct such that Denny's conduct to permit such attribution.[2]

The plaintiff cites *Chapman* to support its claim that Denny's was engaged in state action through his detention and arrest by Miller. In *Chapman*, the security guard, an off-duty sheriff's deputy, stopped the plaintiff after a sales assistant told the deputy that she suspected the plaintiff of shoplifting. The officer directed the plaintiff to the dressing room where he and a female manager searched the plaintiff's purse and the manager searched her person by having her remove her coat and suit jacket and lift her shirt. Applying the nexus test, the court found that a reasonable jury could find that the deputy/security guard's conduct created the impression that he possessed and/or was acting with state-sponsored police powers. This impression was supported by the store policy mandating police intervention in strip search situations and the initiation of a strip search by an armed, uniformed sheriff's deputy. Further, the court said that a reasonable jury could find that the plaintiff believed that the detention was a tacit arrest and fairly attributable to the state. Consequently, the court held that there was a genuine issue of material fact to be determined before the court could find whether the security officer acted under the color of state law when he asked the plaintiff to enter a fitting room with the store's sales manager to search her clothes and person. *Id.* at 835.

In response, Denny's cites *Morris v. Dillard Department Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001), arguing that, even if Miller engaged in state action under the

---

[2] The court is not determining whether Miller acted under the color of state law for purposes of § 1983, as this is Denny's motion, not Miller's.

nexus test, Denny's did not. Denny's argues that the actions of Miller and the actions of Denny's must be considered separately. In *Morris*, the court found that the merchant defendant, Dillard's, was not a state actor as a matter of law. The *Morris* court held that a merchant is not subject to § 1983 liability when an off-duty police officer, employed by that merchant as a private security guard, detains, searches, or arrests a customer subsequent to a report of suspicion by the merchant's employee, unless an officer fails to perform an independent investigation. *Id.* at 750.

The plaintiff argues that *Morris* and *Chapman* are irreconcilable. This court disagrees and finds the reasoning in *Morris* persuasive. For a merchant who hired a private security guard to be liable for the security guard's detention and arrest of an individual, the detention and arrest must be based solely on the merchant's suspicion and not on the security guard's investigation. The officer in *Chapman* did not conduct an independent investigation prior to the conduct leading to the charges; the search was a result of the merchant's suspicion only. When the deputy/security guard conducted the search in *Chapman* the merchant was directly involved and it was possible for the jury to find that the search was performed pursuant to the guard's power as a deputy because of Dillard's strip search policy. In *Morris*, the officer performed an investigation; the search and arrest were the result of the officer's independent investigation, following the merchant's suspicion. The merchant was not directly involved in the search or arrest. The issue in this case more closely resembles the issue in *Morris*. Denny's was not directly involved in the suspicion or the

investigation, and Miller made an independent decision to detain and arrest the plaintiff, without Denny's knowledge or request to do so.

Denny's hiring a security guard is similar to a shopkeeper's calling the police when an individual is suspected of shoplifting. Generally, merchants are not considered to be acting under color of state law for purposes of § 1983 when they detain a person suspected of shoplifting or other crimes, call the police, or make a citizen's arrest. *See Gramenos v. Jewel Cos.*, 797 F.2d 432, 435-36 (7th Cir. 1986). There is no evidence that Denny's colluded or acted jointly with Miller. There is simply no nexus between Miller and Denny's to demonstrate that Denny's acted under the color of law.

Because the plaintiff has not established that Denny's acted under the color of state law or that any of Denny's actions could be found by a reasonable jury to be attributable to the state, summary judgment is appropriate on the § 1983 claim against Denny's.

**B.     42 U.S.C. § 1981 Claim**

The plaintiff alleges that the defendants discriminated against him because of his race, in violation of § 1981. Specifically, the plaintiff claims that the defendants' conduct denied him the "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."[3] 42 U.S.C. §

---

[3] In his response to Denny's motion for summary judgment, the plaintiff alludes to a claim under § 1981's protection against interference with the right to make or enforce a contract based on race with his argument that Denny's denied him the opportunity to wait for a table without being stopped without cause. In

10

1981(a). Denny's argues that summary judgment is appropriate because the plaintiff has failed to establish facts sufficient to support this claim.

To establish a claim under § 1981, the plaintiff must show that: (1) he is a member of a protected class; (2) Denny's intented to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute – in this instance, equal benefit of all laws and proceedings for the security of persons and property. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001). Since the plaintiff has presented facts to support the first and third requirements, the debate centers on Denny's intent.

Intent to discriminate can be shown by direct or circumstantial evidence. A "direct evidence" discrimination case requires proof which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in Denny's actions. The plaintiff does not present direct evidence of discriminatory intent. Consequently, the plaintiff's claim must be evaluated under the tripartite framework

---

Denny's reply brief, it argues that the plaintiff's § 1981 claim fails because he was not attempting to enter into a contractual relationship with Denny's. The plaintiff's complaint alleges violation of § 1981 only for the denial of equal benefit of all laws and proceedings for the security of persons and property. Consequently, it is unnecessary for the court to evaluate a claim for interference with the plaintiff's right to contract. Regardless, such a claim would fail because the plaintiff has not shown that his attempt to enter into a contractual relationship was thwarted. He was leaving the restaurant when Miller stopped and arrested him. Like the plaintiff in *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001), he was leaving the business on his own accord without attempting to make a purchase or engage in any other transaction with Denny's prior to, during, or subsequent to his detention and arrest by Miller. *Id.* at 752. Further, there is no evidence that he was banned or stopped from entering into any other contractual relationship with Denny's after the detention and arrest.

established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  If the plaintiff establishes a prima facie case of intentional racial discrimination, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Carter v. St. Louis Univ.*, 167 F.3d 398, 401 (8th Cir. 1999).  If the defendant makes such a showing, the burden then shifts to the plaintiff to present evidence that the proffered reason was a pretext for unlawful discrimination.  *Carter*, 167 F.3d at 401. The plaintiff may demonstrate that the proffered reason is pretextual by showing that the reason has no basis in fact, was not the actual reason, or was insufficient to explain the defendant's actions.  *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 879 (6th Cir. 2001).

To set out a prima facie case of intentional discrimination in the commercial establishment context, the plaintiff must prove that: (1) he is a member of a protected class; (2) he sought the equal benefit of the laws or proceedings for the security of persons and property; and (3) he was denied that benefit in that (a) he was deprived of that benefit while similarly situated persons outside the protected class were not, and/or (b) he received the benefit in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.  *Id.*, at 872.  Factors relevant to the "markedly hostile" component include whether the conduct was "(1) so profoundly contrary to the manifest financial interests of the merchant and/or [its] employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination."  *Id.* at

871.

In his complaint, the plaintiff alleges that he was denied the benefit of being free from unreasonable searches and seizures. Assuming for the purposes of this motion that the plaintiff has proven a prima facie case of discrimination, he has not presented sufficient evidence to establish that the proffered reason for the stop and arrest is a pretext for unlawful discrimination. Denny's asserts that Miller stopped the plaintiff and Kane because he believed that they were leaving the restaurant without paying their bill. This is a legitimate, non-discriminatory reason for Miller, a security guard, to stop someone leaving the restaurant. The plaintiff presents no evidence to support his contention that this proffered reason is pretextual. To survive summary judgment, the plaintiff must present more than a mere allegation that he was stopped due to his race. Nothing in the record indicates that he was stopped due to his race. Instead, the record shows that a white male who walked past the register without paying was stopped and asked about not paying his bill, just like the plaintiff and Kane. No evidence was presented that Miller knew with greater certainty that the white male had committed an offense before he stopped him than he knew before he stopped the plaintiff.

The plaintiff has also failed to show that the proffered reason for his arrest was pretextual. Denny's asserts that the plaintiff was arrested because he was becoming loud and creating a disturbance. This is a legitimate, non-discriminatory reason to arrest someone. While the plaintiff claims that it was due to his race, he has brought

forth no evidence, direct or circumstantial, to show that Miller was motivated by the plaintiff's race. Further, nothing to support the plaintiff's claim can be inferred from the arrest of the white male, even though the plaintiff and he were arrested for different charges – the plaintiff was arrested for disorderly conduct and the white male for failing to pay his bill. Since the plaintiff has not shown that the proffered legitimate, non-discriminatory reasons for the stop or arrest have no basis in fact, were not the actual reasons, or were insufficient to explain the defendant's actions, summary judgment on the plaintiff's claim against Denny's under § 1981 is appropriate.

**C.    Common Law Claims**

Summary judgment is also appropriate on the plaintiff's common law tort claims against Denny's because the plaintiff has not presented sufficient evidence to establish a genuine issue of material fact as to whether Denny's was Miller's employer for purposes of vicarious liability.[4]

"As a general rule, an employer is not liable for the torts of an independent contractor in the performance of his job." *Miles Farm Supply v. Ellis*, 878 S.W.2d 803, 804 (Ky. App. 1994). Conversely, an employer is generally liable for the negligent acts of its employees who are acting within the scope of their employment.

---

[4] Since the court is granting summary judgment on the plaintiff's common law claims based on the lack of evidence to support Denny's being Miller's employer, it is unnecessary to evaluate the defendant's alternate argument that the plaintiff has failed to establish facts sufficient to support his malicious prosecution claim.

14

*Corbin Fruit Co. v. Decker*, 68 S.W.2d 434 (1934). The plaintiff alleges that Miller committed tortious acts and Denny's is vicariously liable because it was his employer. Denny's contends that Miller was not its employee and that, at most, Law Enforcement Services was an independent contractor of Denny's. Thus, the relevant inquiry in this motion is whether Law Enforcement was an independent contractor or whether Miller was an employee of Denny's.

Whether an individual is an employee so as to bind another by his act is a legal question, any disputed facts being for the jury to determine. *Grubb v. Coleman Fuel Co.*, 114 S.W.2d 477, 479 (Ky. 1938). Since the facts in this case are not in conflict, the question of whether Miller was an independent contractor or a Denny's employee is a legal question for this court to determine.

In determining whether a person was an independent contractor or an employee, Kentucky courts recognize the nine factors set forth in Section 220(2) of the Restatement of the Law of Agency. *See Mullins v. W. Pioneer Life Ins. Co.*, 472 S.W.2d 494, 495 (Ky. 1971). Several of the factors listed in the Restatement are relevant here: the extent of control the master may exercise over the details of the work, whether one employed is engaged in a distinct occupation or business, the skill required in the particular occupation or business, whether the employer provides the tools of the trade and the place of work, and the method of payment. "The ultimate test is the control reserved or exercised by the employer." *Coleman v. Baker*, 382 S.W.2d 843, 846 (Ky. 1964). These factors weigh in favor of a determination that

Miller did not have an employee-employer relationship with Denny's. Instead, Law Enforcement and Denny's had an independent contractor relationship.[5]

First, Denny's arranged for Law Enforcement to provide uniformed security guards on certain days and at during specific hours, but it did not exercise control over the details of those guards' work. Denny's did not tell Miller how to perform his duties. It did not tell Miller where to stand or what type of behavior to watch, and it did not tell him how or when to arrest someone; rather, this decision was in his discretion. (Miller Depo. 72, 83-84) Denny's simply conveyed its goals in hiring security – it wanted security guards to prevent people from walking out on their bills and provide parking lot security – and the guards determined how best to accomplish those goals. Miller performed his duties autonomously; Denny's did not supervise him. Second, Law Enforcement had its own distinct business providing security services to several establishments. Miller was one of the security guards that Law Enforcement arranged to provide the services Denny's requested. Third, Miller was a trained and licensed Corrections Officer, comparable to an attorney or doctor. Special skill is required to be a security officer with the power to carry a sidearm and arrest individuals. (Estes Depo., 53-54) Fourth, Denny's did not provide instrumentalities or tools to Miller. Miller provided his own uniform and used the Jefferson County Correction Department Extraordinary Incident Report forms when he arrested someone. (Miller Depo., 47-48) Fifth, Miller was paid through Law Enforcement. (Miller Depo.,

---

[5] The court is not deciding the type of relationship that Miller had with Law Enforcement because it has not been raised at this time.

16

21) Law Enforcement provided the sign-in sheets to record the hours that Miller worked and then billed Denny's for those hours. Weighing these factors, as a matter of law, Miller was not an employee of Denny's. Consequently, summary judgment in favor of Denny's is appropriate on all of the common law tort claims because Denny's cannot be held vicariously liable for Miller's allegedly tortious conduct. Accordingly,

**IT IS ORDERED** that the motion of the defendant, Denny's, Inc., (DE 33)is **GRANTED**. All claims against Denny's, Inc. are **DISMISSED WITH PREJUDICE** and parties are to bear their own costs.

**IT IS FURTHER ORDERED** that this matter is referred to Magistrate Judge James D. Moyer for the purpose of conducting a settlement conference. The parties shall contact the Magistrate Judge to schedule the conference.

Signed on June 10, 2005

**Jennifer B. Coffman, Judge**
**United States District Court**